RECEIVED
2014 OCT 31  AM 10: 12

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN MEMPHIS

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

**LATUNDRA SHINAULT**
**(PLAINTIFF)**

**VS.**  CIVIL ACTION NO._____

**CITY OF MEMPHIS**
**FIRE DPARTMENT**
**(DEFENDANT)**

## JURY DEMANDED

## COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for Employment discrimination. Jurisdiction is specifically conferred on the court by 42 U.S.C.} 2000e-5. Equitable and other relief are also sought under 42 U.S. C. {2000e-5(g).

2. Plaintiff, Latundra Shinault is a citizen of the United States and resides at 1646 Jay Cove, Memphis Tennessee, (901) 458-8281.

3. Defendant, City of Memphis, Fire Department is a business and division of City Government located at 4255 Raines Road, Memphis, Tennessee 38111. (901) 365-4837

4. Plaintiff was employed by the defendant at 4255 Raines Road, Memphis, Tennessee 38111.

5. Defendant discriminated against plaintiff in the manner indicated in paragraphs 9 and 10

1

of the compliant that started on or about March 26, 2013 that resulted in unwarranted and unlawful discriminatory written disciplinary actions on March 26, 2013 in the form of two written reprimands and later termination on December 17, 2013.

6. Plaintiff filed charges against the Defendant with the Equal Employment Opportunity Commission , # EEOC 490-2013-01298 on April 3, 2013 and later again # EEOC 490-2014-00562 on December 27, 2013 charging defendant with the acts of discrimination indicated in paragraphs 9 and 10 of this complaint. **Exhibit # 1**

7. The Equal Employment Opportunity Commission issued Plaintiff a dismissal and Right to Sue Notice right to file a civil action, a copy of which is attached to this complaint and both # EEOC 490-2013-01298 and 490-2014-00562 were stamped with a mail date of July 29 which stated that a lawsuit must be filed "within" 90 days of Plaintiff's receipt and not from mailed date; the United States EEOC deems that receipt date is receipt is considered as five (days) from mail date, as such this lawsuit is timely filed.

**Exhibit #2 ( same as Ex # 1)**

8. Because of plaintiff's (1)_____ Race, (2)_____color, (3) __**X**__ sex, (sexual harassment) (4) ___religion, (5) ___national origin (6) ____ Age; (7)__ **X** _disability defendant:

    (a)_____ failed to employ plaintiff.

    (b) ___ X ____terminated plaintiff's employment.

    (c)_____failed to promote plaintiff.

(d)\_\_\_X\_\_\_\_ subjected plaintiff to unlawful retaliation, harassment and a hostile work environment as well as unwarranted disciplinary action, after she reported sexual harassment which resulted in adverse employment actions and practices where Plaintiff was separated from her employment Plaintiff was denied an investigation into her allegations and was retaliated against in the form of repeated, continuous and unfair working conditions by assignment of change of work schedule *after* Plaintiff engaged in protected activity of voicing opposition to what she perceived and believed to be derogatory and offensive unwelcomed comments and threats of violence by Management and unfair change in work schedule directed to her all because she reported and voiced her opposition to what seem and appeared to be unlawful and discriminatory disciplinary actions by Management.

9. The circumstances under which the defendant discriminated against plaintiff are as follows:

   a) Plaintiff was hired as a fire-fighter recruit for the City Of Memphis Fire Department on July 26, 2004 with a salary of $37, 476.00 dollars annually.

   b) Plaintiff successfully completed a 12 month probationary period and she was promoted to fire-fighter/EMT-IV with a yearly salary of $40, 608.00 dollars annually.

   c) Plaintiff's salary increased to $45,072.00 dollars annually, after she successfully was employed for three continuous years.

   d) Plaintiff's salary increased to $47,000 dollars annually after she was employed for five years.

3

e) After being employed for over seven years Plaintiff's salary increased to $48,900 annually and her salary was around $51,000 with college incentives and other benefits included.

f) On September 2012, Plaintiff sustained on the job injuries to her knees.

g) On or around February 2012, Plaintiff was subjected to unlawful retaliation when she was singled out and detailed more than normal with work schedule.

h) Plaintiff had a conversation with Lieutenant Hankins where she requested that he ask Chief Lumpkin to look over the T.O. schedule to make sure it was correct. Lieutenant Hankins informed Plaintiff that Chief Lumpkin's response was "Tell Pvt. Shinault , she don't run my damn T.O. "and told him not to contact him anymore with that "bull shit" asking him about Plaintiff's" damn" T.O., since PVT Shinault don't run shit".

i) Plaintiff recorded the message from Lieutenant Hankins into her Journal.

j) Several witness, have personal knowledge of the telephone conversation, between Hankins and Lumpkin:  Lieutenant Hankins, Pvt. D. Parker, Pvt. J. Robinson and Chief Lumpkin.

k) On or around April 2012, Lt. Hankins, began to display an attitude towards Plaintiff simply and solely because she continued to ask  about the T.O issue  especially since Plaintiff reasonably believed and perceived  that she was still being detailed  as if her schedule had and error.

l) Lieutenant Hankins continued to demonstrate a great dislike towards Plaintiff and resentment for asking the same repeated question regarding the T.O., when he yelled

saying "if that's what the chief has on the T.O. then that's where you'll be going" and with even more anger, he yelled "so stop asking!"

m) Irrespective of knowing the past history about what happened to Plaintiff at station 34, Management still scheduled her to work there and denied her request for a transfer.

n) Plaintiff was scared of putting herself in a potentially life threating situation and she immediately began making calls to find someone she could pay to work in her place.

o) While Plaintiff was on the apparatus floor, Lt. Edwards came walking through the door, even after Plaintiff received reassurance by the Chief assured that Lt. Edwards wouldn't be there, and Lt. Edwards laughed and mocked Plaintiff and mumbled something under his breath.

p) Plaintiff only worked for 30 to 40 minutes before her replacement came as she tried to avoid Lt. Edwards since his taunting bullying and presence caused her to be fearful, terrified and stressed,

q) On or around February 2008, Plaintiff was scheduled to work with Lt. Edwards, of which Plaintiff did report to work and he made sexual comments towards her in front of other coworkers, and belittling her.

r) On February 25, 2008 Plaintiff was humiliated an unsanctioned meeting at station 34 on unit #8. The meeting was supposed to be about Plaintiff having trouble finding the hospital while transporting a patient. This meeting included Lt. Edwards, Paramedic Cooley, Paramedic Haurpt, and EMS Supervisor Skeels. **Exhibit # 3**

s) Plaintiff was intimidated during the February 2008 meeting when other employees were also allowed to be part of this meeting and Lt. Edwards, Paramedic Cooley,

Paramedic Haurpt, and EMS Supervisor Skeels. Were allowed and permitted to give their opinion on Plaintiff's work performance and skill level.

t) Only Plaintiff's supervisor should have been the only authorized and permissible personnel during the February 2008 meeting that was able to conduct a meeting with her to correct any performance issues that were pertaining to Plaintiff's work performance.

u) During the February 2008 meeting, Plaintiff was subjected to a hostile work environment and harassment where two non-management employees were present, allowed to interject and laugh and joke about Plaintiff.

v) Feb. 2012 - Plaintiff was scheduled to work with Lt. Edwards, and he made sexual comments towards her in front of other coworkers, and belittling her.

w) On February 25, 2008, Plaintiff reported the February 2008 humiliating incident it to Lt. Hankins and asked to be removed from the supervision of Lt. W. Edwards.

x) Lieutenant Hankins reported the incident to Chief RenFro, and then they reported the incident to Division Chief Payton.

y) Management failed to properly investigate Plaintiff's February 2008 allegation of harassment and hostile work environment and retaliation.

z) On or around Jan 2013 Plaintiff returned to regular duty and again she was scheduled to work at station 34 where Lieutenant Edwards worked irrespective and regardless of the repeated times Plaintiff asked for help about this situation and to be re-assign away from Lt. Edwards

aa) Plaintiff immediately went to Lt. Hankins, after she saw the T.O. (Schedule) with her name on there to work at station 34, and specifically she told him that she was

afraid to work under Lt. Edwards's supervision and asked him if he could do something be done so she wouldn't have to be subjected to a possible hostile work environment. **Exhibit # 4**

bb) Lt. Hankins entered the room and started to yell at Plaintiff and stated: "I'm tired of you, and you're getting on my nerves, why don't you just go where you're told!" Plaintiff in tears told him she was afraid something may happen if she work under Lt. Edwards's supervision.

cc) Lt. Hankins with a very angry voice commented and told Plaintiff, "I'm going to call the Chief and have him to come over and talk to you, because he already cursed me out and told me to stop calling about you trying to run his damn T.O."

dd) Chief Lumpkin came to the station and told me Plaintiff that she had to go to station 34.

ee) Plaintiff felt that her only option was to try and resolve the situation on her own since she felt that there was a plot to assist Lt. Edwards in retaliating against her for reporting him in 2008 for sexual harassment?

ff) Later, Chief Lumpkin decided to call Division Chief (Pillsbury) and afterwards, the three of them had a phone conference in which Chief Pillsbury said, "I'm going to have Chief Sweat call you since she is a female. By talking to her, maybe that will encourage you to feel safe working with Lt. Edwards".

gg) After Plaintiff talked to Chief Sweat she was still petrified with working under Lt. Edwards command. Chief Sweat since she simply told her that, "you will still have to work at station 34 and nothing can be done to change the T.O.

7

hh) Plaintiff later called the union, and spoke to Thomas Malone where she was later informed a few hours later, the fire phone rang and Lt. Hankins told Plaintiff that "they changed the T.O. and she will be detailed to Unit 10."

ii) After the change in the work schedule, Plaintiff experienced hostility from Lt. Hankins since whenever she asked him anything he always responded loudly and aggressively.

jj) Plaintiff looked into the Log book to see where she was assigned for the next day and she observed and read the log book Lt. Hankins log book entry where he wrote about the situation that took place earlier with the Chiefs, he wrote *"Chief Sweat and Chief Payton called me ... asked me a few questions, I'll probably be shipped off to Guantanamo bay."* **Exhibit # 5**

kk) On or around March 26, 2013, Plaintiff received a disciplinary personnel action, a documentation of counseling, because another Pvt. did not properly relieve her.

**Exhibit # 6**

ll) Plaintiff feeling hopeless, and harassed about the issued disciplinary action, asked Lt. Hankins if she could talk with the Chief of which Lt. Hankins told her "No!" because a Document of Counseling was not important".

mm) Plaintiff, I asked to speak to Chief Limpkins again because she felt the written and issued disciplinary action was important and significant to her since it was in writing and it was false, unfair and something negative written documentation about her.

nn) Chief Limpkins again told Plaintiff "No!" in a loud and angry tone, still insisting a Document of Counseling was not of any importance.

oo) Plaintiff although distraught, stressed, terror-stricken and hopeless because of Lt. Hankins attitude towards her, sought the advice of Battalion Chief. While on the phone with that Chief she asked Lt. Hankins to speak with Chief Lumpkin and Lt. Hankins continued to yell "I'm not letting you talk to the Chief!" not knowing that this Chief himself heard Lt. Hankins yelling.

pp) The Battalion Chief later advised Plaintiff that if she disobeyed a command, she could be in more trouble than what was going on. Lt. Hankins threaten Plaintiff before the Chief pulled up, that if she said anything to the Chief she would be disobeying a command and she could be terminated.

qq) The Chief got out of his car and came in the station; Plaintiff stood in the kitchen in the doorway. Lt. Hankins and he were in the front lobby, at the watch desk and Lt. Hankins began talking about the document of counseling disciplinary action Plaintiff received and how she disagreed with it and wanted to talk to Chief about it.

**Exhibit # 7**

rr) Angrily Lt. Hankins stated to "Chief, that girl was in there talking, I told her she got that write up and I'm not letting her talk to you. I told her I handled it, it's just a little write-up, she kept asking to talk to you and Chief it got to the point that I thought I was goanna have to chock (strangle) her (Plaintiff) out".

ss) After their conversation, Plaintiff asked Lt. Hankins why she couldn't I talk to the Chief while he was there, and he yelled "girl if you don't go somewhere and get out my face".

tt) Completely terrified Plaintiff went to the back of the station and stayed away from him and hours later Plaintiff was called back to the front of the station and was given

yet another disciplinary action, document of counseling for not following the rules and regulations.

uu) Later, The Chief sent an email that read, *"I want you to immediately give Pvt. Shinault a Counseling Session for raising her voice to you and for being insubordinate. Explain to her that she is to communicate with you and all other personnel in a respectful manner at all times and if there is one more incident of disrespect or insubordination, you will be conducting a Disciplinary Hearing on her with me guiding and observing you. Progressive Discipline will apply. Explain to her that insubordination is a Major Violation that can lead to Progressive Discipline up to and including termination. Explain to her that if she feels like she needs help with any personal issues that may be affecting her behavior at work that we will do whatever we can to help her or get her some help from the City's Employee Assistant Program. The program is called "Concerned" and the number is: 901-458-4000. Please give her this number and tell her that it is an anonymous process if she decides to call them. Lt. Hankins feel free to show Pvt. Shinault this email so that she understands we are in agreement on this matter. Chief Pillsbury, I Courtesy Copied you because I wanted you to be aware of this issue and its potential for exaltation (Chief Lumpkin)"* **Exhibit # 8**

vv) Plaintiff contacted EAP as directed. **Exhibit # 9**

ww) Plaintiff was restricted from speaking to management, and felt her life was threatened by Management.

xx) The next morning plaintiff contacted the Union and made another appointment with EAP.

yy) Management detailed Plaintiff to station 29.

zz) Management thorough The lieutenant told Plaintiff that the chief instructed that he "check to see if Shinault (Plaintiff) even had her EMT license and if not, send her home.

aaa)   On April 2013 Plaintiff checked into Mental health facility, after evaluation began PHP (partial hospitalization program), 5 days a week psychotherapy.

**Exhibit # 10**

bbb)   Plaintiff contacted the Union from April 2013 through Oct. 2014 with the hopes that they could help to resolve the issues.

ccc)   On March 26, 2013 Plaintiff received two (2) written reprimands. **Exhibit # 11** See 5

ddd)   On March 26, 2013, Plaintiff was threatened with physical harm after she requested to talk to the Chief, when Lt. Hankins remarked to Chief Lumpkin, "For a minute Chief, I thought I was going to have to choke her." **Exhibit # 12** (see 6)

eee)   On March 26, 2013, Chief Lumpkin told Plaintiff that she needed to seek the assistance of EAP **Exhibit # 13** (See 8)

fff) On March 27, 2013, Plaintiff reported the incident to Thomas Malone (Union Representative)

ggg)   On March 26, 2013, my lieutenant threatened to physically harm me. The combination of his threats, and previous on the job harassments, forced me to seek more intense medical help. I saw no recourse but to be reassigned to a different

11

department. Due to past and most present incidents, I was so overwhelmed by fear, and paranoia to the point that the medical professionals whom I had been seeing advised me for my safety and in the best interest for my mental help, to take a medical leave and remove myself from this ongoing situation. **Exhibit # 14 (See 9)**

hhh) On March 30, 2013, Plaintiff reported the incident to Linda Jones EAP **(See Exhibit #13) (See 8)**

iii) On April 3, Plaintiff reported incident to Allen Hammond (EEOC) **Exhibit # 15**

jjj) Prior to receiving a threat by Lt. R. Hankins on March 26, 2013, Plaintiff was subjected to sexual harassment by Lieutenant W. Edwards on March 25, 2008. **(See 3) Exhibit # 12)**

kkk) Management refused and failed to investigate Plaintiff's sexual harassment complaint in 2008

lll) Plaintiff has avoided Lieutenant W. Edwards to the best of her ability by requesting that other employees work for her.

mmm) After Plaintiff reported sexual harassment, she was issued unmerited disciplinary written disciplinary actions in 2009 and 2010.

nnn) On April 3, 2013, Plaintiff filed a charge of discrimination with the U.S. EEOC for sex and retaliation. **(See Exhibit # 1)**

ooo) On April 2013 Plaintiff Checked into a Mental health facility, after evaluation began PHP (partial hospitalization program), and received 5 days a week psychotherapy from : Dr. Fu; Patrick Murphy;Lee Mauney;Cary Ciocca;Abbott Jordan;Lenora Coleman; LaShawn Lewis;John Houllhan III, Rachel Everett.
**Exhibit # 16**

ppp) On October 15, 2013 Plaintiff contacted Allen Benson about extending her medical leave.

qqq) On November 12, 2013 Plaintiff requested approval from Director Allen Benson for extended illness leave of absence. **Exhibit # 17 (See 16)**

rrr) On December 12, 2013 Fire Director Alvin Benson informed Plaintiff in writing that her request for extended leave was denied. **(See Exhibit # 17)**

sss) On December 12, 2013 while out on sick leave, Plaintiff's Employer threaten her with termination when they stated that they will separate her from employment from based upon job abandonment. **(See Exhibit # 17)**

ttt) On December 27, 2013, Plaintiff filed a second charge with the U.S. EEOC for sex, disability and retaliation. **(See Exhibit # 1)**

uuu) Lt. Edwards made sexist remarks to Plaintiff when he asked her, "Were you painting your nails, or putting make-up while you were driving". **(See Exhibit # 1)**

vvv) Lt. Edwards made inappropriate sexual remarks to Plaintiff when he talked to her "about giving his son condoms to keep from getting girls pregnant" **(See Exhibit # 2)**

www) Plaintiff reported all incidents to Lt. Hankins but, no investigation was conducted and the only solution to the problem once that Management told her to take territory training. **(See Exhibit # 2)**

xxx) Management told Plaintiff that she didn't have to be under Lt. Edwards's supervision until she was comfortable with working with him under his supervision and that Lt. Edwards was going to be forced to apologize. **(See Exhibit # 2)**

yyy) Lt. Edwards called Plaintiff and told her, he was not going to apologize for doing his job.

10. The acts set forth in paragraphs 9 of this complaint:

    (a) __X__ are still being committed by defendant.

    (b)_____ are no longer being committed by defendant.

    (c)_____ may still be being committed by defendant.

11. Plaintiff attaches to this complaint a copy of the charges filed with the Equal Employment Opportunity Commission, which charges and determination are submitted as a brief statement of the facts supporting this complaint.

    WHEREFORE, plaintiff prays that the Court grant the following relief to the plaintiff:

    (a)____ Defendant be directed to employ plaintiff,

    (b)__X__ Defendant be directed to re-employ plaintiff,

    (c )____ Defendant be directed to promote plaintiff

    (d) _X_ Defendant be directed to (i) purge's plaintiff's personnel file of all

disciplinary actions that occurred from the time she reported sexual harassment and all other Charges of unlawful from 2008 through December 17, 2013 (ii) provide plaintiff payment for all leave time including sick and annual days she was forced to use and be out away from her job due to the unbearable , unlawful hostile working conditions that resulted in medical diagnosis and treatment   (iii) payment in the amount of 75,000 for Lost wages (iv) to be reinstated and moved to another department within fire services :Fire Prevention, Operations, Air mask, training (qualified training instructor), Inspector, Emergency Response Office,  (v) awarded a Line of Duty Disability Pension (vi) $150,000 for 2 years' salary and pension (vii) Memphis Fire engaged an external entity to monitor procedures and policies on behalf of non-management employees (vii) payment of $300, 000 for emotional stress; and Plaintiff asks the Court to grant such relief as may be appropriate, including injunctive orders, damages costs and all attorney's fees.

_____

SIGNATURE OF PLAINTIFF (Lataundra M Shinault)