IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

LATUNDRA SHINAULT,

    Plaintiff,

vs.                                                    No. 14-2865-SHL-dkv

CITY OF MEMPHIS FIRE DEPARTMENT,

    Defendant.

_____

REPORT AND RECOMMENDATION ON THE DEFENDANT'S MOTION TO DISMISS

_____

On October 31, 2014, the plaintiff, Latundra Shinault
("Shinault"), filed a *pro se* employment discrimination complaint
against the defendant, City of Memphis Fire Department ("MFD"),
alleging she was terminated and subjected to retaliation,
harassment and a hostile work environment because of her sex and
disability in violation of Title VII of the Civil Rights Act of
1964, 42 U.S.C. § 2000e *et seq*. (Compl., ECF No. 1.)
Concurrently, Shinault filed a motion for leave to proceed *in
forma pauperis*, (ECF No. 2), which the court granted on November
3, 2014, (Order, ECF No. 5). On December 25, 2014, Shinault
filed an amended complaint in which she alleged she was
subjected to retaliation, harassment, and a hostile work
environment after she reported sexual discrimination. (Am.

Compl., ECF No. 7.)[1]   The court entered an order to issue service of process for MFD on December 2, 2014. (Order, ECF No. 10.)   The case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

Now before the court is MFD's February 19, 2015 motion to dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.   (Mot. to Dismiss, ECF No. 15.)   On March 16, 2015, Shinault filed a response.   (Resp., ECF No. 16.)[2]   For the reasons that follow, the court recommends that MFD's motion to dismiss be granted.

## I.  PROPOSED FINDINGS OF FACT

---

[1]Shinault's amended complaint, which supplants the original complaint, contains references to more than forty pages of exhibits that she filed with her original complaint.   For purposes of evaluating Shinault's amended complaint for failure to state a claim, the court will consider the exhibits filed with her original complaint.

[2]In her response to the motion to dismiss, Shinault includes more facts in support of her claims. (Resp., ECF No. 16.)   The court is limited to the facts and legal claims as raised in the pleadings; as a result, the additional facts asserted in Shinault's response to the motion to dismiss are not part of the lawsuit and the court will not consider them.   *See Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541-42 (6th Cir. 2012)(citing Moore's Federal Practice § 12.34 ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).")).

In her amended complaint, Shinault alleges that she was hired by MFD on July 26, 2004 as a firefighter recruit. (Am. Compl. ¶ 9(a), ECF No. 7.) After successfully completing a twelve-month probationary period, Shinault was promoted to "fire-fighter/EMT-IV." (*Id.* ¶ 9(b).) Shinault's salary increased after her third, fifth, and seventh year on the job. (*Id.* ¶ 9(c)-(e).)

Shinault alleges that on February 25, 2008, at a meeting at station #34 called by Lt. Edwards to discuss Shinault's "trouble finding the hospital while transporting a patient," Lt. Edwards belittled her, made inappropriate sexual comments towards her in front of two other EMT coworkers, and humiliated her. (Am. Compl. ¶ 9(q)-9(r), ECF No. 7; Ex. 3, ECF No. 1-2.) Specifically, according to Shinault, Lt. Edwards asked her at the meeting: "Were you painting your nails, or putting make-up while you were driving." (Am. Compl. ¶ 9(uuu), ECF No. 7; Ex. 3, ECF No. 1-2.) Further, Lt. Edwards, when explaining why Shinault should consider getting a GPS, compared the situation to "giving his son condoms to keep from getting girls pregnant." (Am. Compl. ¶ 9(vvv), ECF No. 7; Ex. 3; ECF No. 1-2.) Shinault alleges that during this meeting, she was subjected to "a hostile work environment and harassment." (Am. Compl. ¶ 9 (u), ECF No. 7.)

On the same day, Shinault reported the "February 2008 humiliating incident to Lt. Hankins and asked to be removed from the supervision of Lt. [] Edwards." (*Id.* ¶ 9(w).) Lt. Hankins reported the incident to Chief Renfro, who then reported it to Division Chief Payton. (*Id.* ¶ 9(x).) Shinault alleges that "[m]anagement failed to properly investigate [her] February 2008 allegation of harassment and hostile work environment and retaliation." (*Id.* ¶ 9(y).) Further, she alleges that after reporting Lt. Edwards's sexual harassment, "she was issued unmerited disciplinary actions in 2009 and 2010." (*Id.* ¶ 9(mmm).)

In February of 2012, four years after the meeting with Lt. Edwards, Shinault alleges that "she was singled out and detailed more than normal with work schedule." (*Id.* ¶ 9(g).) After she requested Lt. Hankins to ask Chief Lumpkin about her schedule, she was told by Lt. Hankins that Chief Lumpkin's response was to "not contact him anymore with that 'bull shit' asking him about [Shinault's] damn" schedule. (*Id.* ¶ 9(h).) According to Shinault, after April of 2012, Lt. Hankins "demonstrate[d] a great dislike . . . and resentment" toward Shinault "simply and solely because she continued [asking] about the [scheduling] issue." (*Id.* ¶ 9(k)-(l).) Shinault alleges that during one such request, Lt. Hankins yelled at her in anger to "stop asking" about a schedule change. (*Id.* ¶ 9(l).) She claims

that management still scheduled her to work at station 34 and denied her transfer request even though they knew her past history working at that station. (*Id.* ¶ 9(m).)

In September of 2012, Shinault sustained on-the-job injuries to her knees. (*Id.* ¶ 9(f).) Shinault returned to regular duty on January 2013 and again was scheduled to work at station 34 with Lt. Edwards. (*Id.* ¶ 9(z).) She told Lt. Hankins that she was afraid to work under Lt. Edwards's supervision; however, Lt. Hankins yelled at Shinault and stated: "I'm tired of you, and you're getting on my nerves, why don't you just go where you're told!" (*Id.* ¶ 9(bb).) Lt. Hankins talked to Chief Lumpkin, who came to the station and told Shinault that she had to go to station 34. (*Id.* ¶ 9(cc), (dd).) Shinault alleges that "she felt there was a plot to assist Lt. Edwards in retaliating against her for reporting him in 2008 for sexual harassment." (*Id.* ¶ 9(ee).) Later, Chief Sweat, a female, spoke to Shinault to encourage her to feel safe working with Lt. Edwards. (*Id.* ¶ 9(ff).) Chief Sweat again told her that she had to work at station 34 and nothing could be done to change the schedule. (*Id.* ¶ 9(gg).) Shinault later called the union and spoke to Thomas Malone; she was informed in a few hours by Lt. Hankins that "they changed [her schedule] and she will be detailed to Unit 10." (*Id.* ¶ 9(hh).)

Shinault alleges that after the change in the work schedule, she experienced hostility from Lt. Hankins because "whenever she asked him anything he always responded loudly and aggressively." (*Id.* ¶ 9(ii).) On March 26, 2013, Shinault alleges that she "received a disciplinary personnel action, a documentation of counseling" because another private did not properly relieve her. (*Id.* ¶ 9(kk); Ex. 5, ECF No. 1-4.) Shinault states that she "perceives the documentation of counseling session to be a form of written disciplinary action (written reprimand) since failure to adhere results in adverse employment determination/consequences and is considered a major violation," even though the documentation of counseling session specifically states "[t]his is not a disciplinary action." (Am. Compl. ¶ 9(a-2), ECF No. 7; Ex. 5., ECF No. 1-4.)

Shinault sought to talk to Chief Lumpkin about the documentation of counseling, but her direct supervisor, Lt. Hankins, refused to let her, insisting that a documentation of counseling session was not important. (Am. Compl. ¶ 9(ll)-(nn), ECF No. 7.) When she persisted in her requests, Lt. Hankins allegedly threatened her with termination for disobeying a command if she said anything to the Chief. (*Id.* ¶ 9(pp).) Nevertheless, Shinault began talking to Chief Lumpkin about the documentation of counseling, at which point Lt. Hankins stated:

> Chief, that girl was in there talking, I told her she
> got that write up and I'm not letting her talk to you.
> I told her I handled it, it's just a little write-up,
> she kept asking to talk to you and Chief it got to the
> point that I thought I was goanna [sic] have to chock
> [sic] (strangle) her [] out.

(*Id.* ¶ 9(rr).) Hours later, Shinault was given another documentation of counseling for not following rules and regulations. (*Id.* ¶ 9(tt).) Later that day, Chief Lumpkin sent an email to Lt. Hankins instructing him to give Shinault a "Counseling Session for raising her voice [] and being insubordinate." (*Id.* ¶ 9(uu); Ex. 7, ECF No. 1-6.) In this email, Chief Lumpkin advises Lt. Hankins to advise Shinault to get help from the City's Employee Assistant Program ("EAP"). (*Id.*)

Thereafter, Shinault contacted EAP. Management detailed Shinault to station 29. (*Id.* ¶ 9(yy).) In April 2013, Shinault took a medical leave, checked into a mental health facility and, after evaluation, began a partial hospitalization program receiving psychotherapy five days a week. (*Id.* ¶¶ 9(aaa), (ggg).) On April 3, 2013, Shinault filed an EEOC charge based on all of the above incidents ("First EEOC Charge"). (*Id.* ¶ 9(iii); Ex. 15, ECF No. 1-10.)

In her First EEOC Charge, Shinault checked the boxes indicating that she experienced discrimination based on sex and

retaliation. (Ex. 15, ECF No. 1-10.)  In this charge, Shinault alleges the following:

> I was hired on July 26, 2004 as a Firefighter.
>
> In 2008 I was subjected to sexual harassment from Lt. W. Edwards, a male. After I complained of the sexual harassment internally, I have been subjected [to] continuous retaliation in that I have been scheduled to work with Edwards. However, I have avoided him at all cost which includes, but not limited to requesting other employees to work for me. In addition, I have been yelled at by mgmt. officials and made to perform training duties. In 2009 and 2010, I was issued unmerited write-ups.
>
> Recently, on March 26, 2013 I received two written reprimands and advised that I needed to seek the assistance of EAP. In addition, I believe that the schedules are being done by Edwards who constantly assigns me to work with him. I believe that this is an attempt to subject me to harassment and intimidation for my sexual harassment complaint.
>
> Throughout the entire process, I have been told by ranking officers that I need to follow the change [sic] of command for complaints but no actions done [sic] to resolve the matter. I have been told there was no one else to complain to in an effort to keep me from seeking resolution and complaining to others.
>
> I believe that I have been discriminated against because of my sex, female (sexual harassment) and retaliated against for complaining about the sexual harassment in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*)

Shinault alleges that she communicated with MFD regarding her status after her doctor cleared her to return to work on June 8, 2013, and subsequently July 1, 2013. (*Id.* ¶ 9(a-5).) On October 15 and November 12, 2013, Shinault contacted Allen

Benson, Director of Division of Fire Services for the City of Memphis, about extending her medical leave. (*Id.* ¶¶ 9(ppp)-(qqq); Ex. 16, ECF No. 1-11.)  In a letter dated December 10, 2013, Benson informed Shinault in writing that her request for extended leave was denied because she had exhausted her FMLA leave on July 1, 2013, and had been on unpaid leave since that time. (*Id.* ¶¶ 9(rrr); EX. 16, ECF No. 1-11.)  In the letter, Shinault was advised that if she did not return to work by December 17, 2013 she would be terminated based on job abandonment. (*Id.* ¶ 9(sss); Ex. 16, ECF No. 1-11.)  Shinault was terminated on December 17, 2013.

On December 27, 2013, Shinault filed a second charge with the EEOC ("Second EEOC Charge"). (*Id.* ¶ 9(ttt); Ex. 15, ECF No. 1-10.) In her Second EEOC Charge, Shinault checked the boxes indicating that she experienced discrimination based on sex, retaliation, and disability. (Ex. 15 at 2, ECF No. 1-10.)  In this charge, Shinault alleged the following:

> I filed a previous charge of discrimination on April 3, 2013, alleging sex discrimination and retaliation.
>
> Since the filing of the first charge, I have become disabled due to the situation from the employer that has caused me to be off work. I received documentation stating that my resignation was effective May 26, 2013; however, I was on leave under FMLA. I remained on FMLA and extended leave until I was discharged on December 17, 2013. In addition, my extended leave request was not granted.

I believe that I was not granted additional leave and discharged because the above employer did not want to resolve my previous charge issues.

I believe that I have been retaliated against for filing a previous charge of discrimination (EEOC Charge No.: 490-2013-01298) in violation of Title VII of the Civil Rights Act of 1964, as amended and discriminated against due to my disability in violation of the Americans with Disabilities Act Amendments Act.

(*Id.*)  The EEOC considered both of Shinault's charges of discrimination and ultimately issued a notice of right to sue on July 29, 2014.  (ECF No. 1-1.)[3]

## II. PROPOSED CONCLUSIONS OF LAW

The City of Memphis Fire Department moves to dismiss Shinault's claim of sex discrimination and her retaliation claim for failure to state a claim for which relief can be granted.[4]

---

[3]Shinault's timely filed her complaint after receiving the notice of right to sue.  Title VII provides that a civil action must be brought within ninety days after the EEOC issues a notice of right to sue.  42 U.S.C. 2000e-5(f)(1).  The Sixth Circuit has held that the ninety-day period begins to run five days after the date on which the EEOC mails the notice of right to sue to the claimant.  *Hunter v. Stephenson Roofing Co.*, 790 F.2d 472, 475 (6th Cir. 1986); *see also Cook v. Providence Hosp.*, 820 F.2d 176, 179 n.3 (6th Cir. 1987)(stating that there is a presumption that mail is received by the addressee and that the ninety-day time limit begins to run five days after the EEOC mails the notice of right to sue).  The EEOC mailed the notice of the right to sue on July 29, 2014, and therefore the ninety-day time limit began to run on August 3, 2014.  Shinault filed the instant lawsuit on October 31, 2014, which was within the ninety-day time limit.

[4] It is not clear whether MFD's motion seeks to dismiss the original complaint or the amended complaint.  MFD's motion to dismiss was filed after the amended complaint was filed but all

A.  <u>Standard of Review for Failure to State a Claim</u>

In assessing whether Shinault's complaint states a claim upon which relief may be granted, the court applies the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007).  To survive Rule 12(b)(6) dismissal following *Iqbal* and *Twombly*, a complaint must "'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009)(quoting *Iqbal*, 556 U.S. at 678).  The court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief.  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).  However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,'

references in the motion to dismiss are to the original complaint.  Moreover, recently, on April 15, 2015, MFD filed an answer to the amended complaint.  The court will treat the motion to dismiss as a motion to dismiss the amended complaint.

rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create [the plaintiff's] claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("[D]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that

duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

The Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), makes clear that Title VII plaintiffs are not required the plead the elements of a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). All that is required is that the complaint comply with "Rule 8(a)'s simplified pleading standard." 534 U.S. at 513.

B.   <u>Shinault's Title VII Sex Discrimination Claim</u>

Shinault alleged sex discrimination in her original complaint but does not allege that she was discriminated because of her sex in her amended complaint. However, in both her First and Second EEOC Charges which are attached to her original complaint, Shinault checked the box for sex discrimination. She stated in her First EEOC Charge that "In 2008, I was subjected to sexual harassment from Lt. Edwards, a male. (First EEOC Charge, ECF No. 1-10.) She also makes reference to sex discrimination in the amended complaint. To the extent, Shinault intends to claim discrimination based on sex, her complaint fails to state a claim.

In determining the motion to dismiss, the court considers facts alleged by Shinault in her First and Second EEOC Charges. *See Amini v. Oberlin Coll.*, 259 F.3d 493, 502-03 (6th Cir. 2001) (reversing a 12(b)(6) dismissal of a discrimination claim where the district court failed to consider the facts alleged in the plaintiff's discrimination charge, which was attached to his complaint); *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) ("[B]ecause aggrieved employees—and not attorneys—usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charges.").

Title VII prohibits employment discrimination based on race, color, religion, sex and national origin. 42 U.S.C. § 2000e-2. To establish a *prima facie* case of sex discrimination, a plaintiff is required to show that: (1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably. *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004). In order to demonstrate that the employer subjected the plaintiff to an adverse employment action, the plaintiff must show that the defendant "changed the terms or conditions of her employment in a way that was materially adverse to her."

*Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999). The change must be more than a mere convenience; it must be of the magnitude of a termination of employment, a demotion, a decrease in salary, a material loss off benefits. *Id.* (citing *Crady Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir. 1993)).

In the instant case, the first prong is easily met. Shinault is a female and thus is a member of a protected group. However, neither the complaint nor the EEOC charges make clear what adverse employment action Shinault claims constituted the alleged sex discrimination. Shinault alleges that in 2009 and 2010, she was issued "unmerited write-ups," (Am. Comp., 9(mmmm); First EEOC Charge, ECF No. 1-10.) The complaint, however, does not include any other factual allegations about the write-ups. Shinault does not identify the date of the write-ups, who issued the write-ups or the subject matter of the write-ups. She does not allege that these write-ups constituted an adverse employment action or that male employees were not subjected to the same treatment by the employer.

Shinault also alleges that on March 26, 2013, she received two documentations of counseling sessions, which she "perceives . . . to be a form of written disciplinary action." (Am. Compl. ¶ 9(kk), (a-2), ECF No. 7.) However, each documentation of counseling session states at the top of the form, "This is not a

disciplinary action," (*See* Ex. 5, ECF No. 1-4). Therefore, Shinault has not identified a "materially adverse change in the terms and conditions of [her] employment." *Hollins*, 188 F.3d at 662. Moreover, the 2013 documentations of counseling sessions were issued because Shinault failed to comply with the MFD's Rules and Regulations Manual, (*See* ECF No. 1-4). Shinault has not pled that similarly situated male employees were treated more favorably for the same infractions.

Although her employment was terminated, Shinault does not allege that she was terminated because she was a female. Instead, Shinault claims that she was terminated in retaliation for filing a prior EEOC charge and for being disabled. (*See* Second EEOC Charge 2, ECF No. 1-10.) In short, Shinault has not alleged any facts which plausibly suggest that she was subjected to an adverse employment decision because of her sex. Thus, Shinault has not pled sufficient facts to satisfy Rule 8's requirement of notice pleading to state a claim of sex discrimination.

It is not clear whether Shinault is also claiming a sex-based hostile work environment. Shinault' sixteen-page amended complaint contains only two explicit references to sexual harassment. On the second page, Shinault alleges that MFD subjected her to unlawful retaliation, harassment and a hostile work environment, after she reported "sexual harassment." (Am.

Compl. ¶ 8, ECF No. 7.)   On page nine of the amended complaint, she alleges she felt there was a plot to retaliate against her for reporting Lt. Edwards for sexual harassment in 2008.  (*Id.* ¶ 9(ee).)   It appears that Shinault is claiming she was subjected to hostile working conditions such as write-ups in 2009 and 2010, scheduling issues and two counseling sessions in 2012, and termination in 2013 in retaliation for making a sexual discrimination charge in 2008 rather than a hostile environment based on sex.   To the extent, Shinault intends to claim a hostile work environment based on sex, her complaint fails to state a claim.

"A plaintiff may establish a violation of Title VII by proving that the discrimination based on sex created a hostile or abusive work environment." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560 (6th Cir. 1999); *see also Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000)("A plaintiff may establish a violation of Title VII by proving that the sex discrimination created a hostile or abusive work environment without having to prove a tangible employment action.").

Under Title VII, to establish a hostile work environment claim based on sexual harassment, Shinault must show: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment created a hostile work

environment; and (5) the employer is liable.  *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006).  In the Supreme Court's decision in *Harris v. Forklift Systems, Inc.*, 510 U.S. 17 (1993), the Court explained that a hostile environment is a "workplace [that] is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create and abusive working environment." *Id.* at 21 (citations and internal quotation marks omitted).  The conduct must be severe or pervasive enough, both subjectively and objectively, such that a reasonable person would find it hostile and the victim found it hostile.  *Id.* at 21-22. Relevant factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employees work performance."  *Id.* at 23.

Shinault alleges in her amended complaint that she experienced sexual harassment when Lt. Edwards commented in 2008 is "Were you painting your nails, or putting make-up while you were driving" and this is like "giving his son condoms to keep from getting girls pregnant."  (Am. Compl. ¶ 9(uuu), (vvv), ECF No. 7; Ex. 3, ECF No. 1-2.)  The complaint contains no other examples of sexually derogatory comments or references to

Shinault's gender.  According to Shinault, after April of 2012,
Lt. Hankins "demonstrate[d] a great dislike . . . and
resentment" toward Shinault "simply and solely because she
continued [asking] about the [scheduling] issue," not because of
her gender.  There are not sufficient allegations of conduct
severe and pervasive enough to create a hostile work environment
based on sex.  The court therefore recommends that to the extent
Shinault purports to assert a hostile environment based on sex,
her claim be dismissed.

C.   Shinault's Retaliation Claim

     In her amended complaint, Shinault alleges that she was
retaliated against because she filed a sexual harassment
complaint against Lt. Edwards in 2008.  (First EEOC Charge 1,
ECF No. 1-10.)   To state a claim of retaliation under Title
VII, Shinault must allege that: (1) she acted in a manner
protected by Title VII; (2) MFD knew of this exercise of
protected activity; (3) MFD subsequently took an adverse action
against Shinault, or she was subjected to severe or pervasive
retaliatory harassment by a supervisor; and (4) the adverse
action had a causal connection to the protected activity.  *Lundy*
*v. Gen. Motors Corp.*, 101 F. App'x 68, 73 (6th Cir. 2004)*.*
There are two types of "protected activity" for purposes of a
Title VII retaliation claim: (1) "oppos[ing] any practice made
an unlawful employment practice" by Title VII, and (2) making a

charge, testifying, assisting, or participating in an "investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3(a).

"To demonstrate a causal connection between a materially adverse action . . . and the exercise of protected rights, a plaintiff must proffer evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." *Lindsey v. Whirlpool Corp.*, 295 F. App'x 758, 769 (6th Cir. 2008)(citation and internal quotation marks omitted). In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008) the Sixth Circuit explained:

> Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation. But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.

*Id.* at 525. "[C]ases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months." *Parnell v. West*, 114 F.3d 1188, at *3 (6th Cir. 1997)(listing a number of cases that support this proposition).

Shinault satisfies the first element because she alleges that she filed a sexual harassment complaint against Lt. Edwards

in 2008.  (First EEOC Charge 1, ECF No. 1-10.)  However, it is unclear what adverse action MFD allegedly took against Shinault in retaliation for the filing of the sexual harassment complaint.  In her First EEOC Charge and in her amended complaint, Shinault conclusorily alleges that in 2009 and 2010, she was issued unmerited write-ups without any other details. (First EEOC Charge 1, ECF No. 1-10.)  Shinault does not allege, however, that these write-ups were issued in retaliation for her protected activity or otherwise provide any information about these write-ups to plausibly infer retaliation.

Moreover, a time lag of more than ten months does not by itself support an inference of a causal link.  *See, eg.*, *Ross v. Mich. State Univ. Bd. of Trustees*, No. 11-2278, 2012 WL 3240261, at *3 (6th Cir. June 20, 2012)(affirming dismissal of a retaliation claim noting that a delay of approximately one year was too long to support an inference of causation by itself); *Kean v. IT-Works, Inc.*, 466 F. App'x 468, 471 (6th Cir. 2012)(holding that, absent other evidence of retaliation, a two-and-a-half month gap is not sufficient to support an inference of causation); *Johnson v. Cleveland City Sch. Dist.*, 344 F. App'x 104, 113 (6th Cir. 2009)(holding that a gap of over one year between the plaintiff's protected activity and her termination was not "sufficiently close in time . . . to warrant an inference of causation"); *Nguyen v. City of Cleveland,* 229

F.3d 559, 565-67 (6th Cir. 2000)(holding that a one-month gap between a complaint and the retaliatory conduct could not, without more, support a causal inference); *Parnell*, 114 F.3d at 1188 (stating that a time lag of seven months does not by itself support an inference of a causal link).

Shinault specifically alleges that in February 2012, she was "subjected to unlawful retaliation when she was singled out and detailed more than normal with work schedule." (Am. Compl. ¶ 9(g), ECF No. 7.)[5]  Even assuming her allegations post-February 2008 constitute an adverse employment action or a "severe or pervasive retaliatory harassment by a supervisor," Shinault has not plausibly pled that the change in work conditions had a causal connection to her protected activity. The February 2012 change in work condition occurred approximately four years after her sexual harassment report; such a time lag is insufficient to support an inference of a causal link. *See, e.g.*, *Ross v. Mich. State Univ. Bd. of Trustees*, No. 11-2278, 2012 WL 3240261, at *3 (6th Cir. June 20, 2012)(affirming dismissal of a retaliation claim noting that a delay of approximately one year was too long to support an inference of causation by itself); *Kean v. IT-Works, Inc.*, 466

_____

[5]Shinault's complaint does not contain any other allegations from February 2008 until February 2012 from which the court can infer continuous retaliation.

F. App'x 468, 471 (6th Cir. 2012)(holding that, absent other evidence of retaliation, a two-and-a-half month gap is not sufficient to support an inference of causation).

For the same reason, any subsequent adverse actions alleged by Shinault, such as her termination or the two documentations of counseling she received in March 2013, cannot be causally linked to Shinault's 2008 protected activity.[6]

## III. RECOMMENDATION

For the foregoing reasons, it is recommended that MFD's motion to dismiss be granted pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted this 29th day of April, 2015.


s/ Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE


NOTICE
Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file

---

[6]In her Second EEOC Charge, Shinault alleges that she was discharged in retaliation for filing the First EEOC Charge, (Am. Compl. ¶ 9(iii); Second EEOC Charge 2, ECF No. 1-10), but she does not make this claim in her amended complaint nor does she set forth sufficient factual allegations to support this claim. In her Second EEOC Charge, Shinault also alleges that she was discriminated based on her disability in violation of the Americans with Disabilities Act but she does not claim discrimination based on disability in her amended complaint. (Second EEOC Charge 2, ECF No. 1-10.)

written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.