IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| LATUNDRA SHINAULT, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CITY OF MEMPHIS )<br>FIRE DEPARTMENT, )<br>)<br>    Defendant. ) | No. 14-cv-2865-SHL-dkv |

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS AND GRANTING DEFENDANT'S MOTION TO DISMISS**

Plaintiff filed a *pro se* Complaint on October 31, 2014, alleging that Defendant discriminated against her based on her gender and subjected her to unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981. Plaintiff also claims Defendant discriminated against her on the basis of her disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a).

Before the Court is Defendant's Motion to Dismiss (ECF No. 15), filed on February 19, 2015, and Plaintiff's response thereto (ECF No. 16), filed on March 16, 2015. On April 29, 2015, Magistrate Judge Vescovo issued a Report and Recommendation (ECF No. 18), recommending that Defendant's Motion to Dismiss be granted. Plaintiff filed timely objections to the Report and Recommendation on June 24, 2015. (ECF No. 22.)[1] For the reasons set forth below, the Court hereby ADOPTS the Report and Recommendations and GRANTS Defendant's Motion to Dismiss.

---

[1] The Court granted Plaintiff's Motion for Extension of Time to File Objections. (ECF No. 21.)

**BACKGROUND**

The following allegations from Plaintiff's complaint, amended complaint and the attachments to those pleadings are considered to be true for the purposes of this motion.

Plaintiff began working as a firefighter and emergency medical technician ("EMT") for the Memphis Fire Department in July 2004. On February 25, 2008, Plaintiff was called to a meeting by her superior, Lieutenant Edwards, to discuss Plaintiff's difficulty in finding the hospital while transporting a patient. At this meeting, Lt. Edwards allegedly made inappropriate sexual comments to Plaintiff in front of two of Plaintiff's co-workers. Specifically, Plaintiff claims Lt. Edwards asked her if she was painting her nails or putting on make-up while driving. Lt. Edwards also told Plaintiff she should get a GPS navigation system and that giving Plaintiff a GPS would be like "giving his sons condoms to keep from getting girls pregnant."

Plaintiff immediately reported this alleged harassment to another supervisor, Lieutenant Hankins, and asked him to remove her from Lt. Edwards' supervision. Lt. Hankins reported Plaintiff's allegations and request for reassignment up the chain of command to Chief Renfro, who, in turn, reported it to Division Chief Payton. Plaintiff claims that management failed to investigate her harassment and hostile work environment claims properly, but does not specify what was wrong with the investigation. Plaintiff also claims Defendant retaliated against her by disciplining her in 2009 and 2010 without justification, but offers no details about that discipline, such as more specifically when it was issued, what it was for or why it was unjustified.

Four years later, in February 2012, Plaintiff began having issues with her schedule, claiming that she was singled out and "detailed" more than others.[2] Plaintiff requested schedule changes, but those changes were denied. Plaintiff asked Lt. Hankins to ask Chief Lumpkin about

---

[2] It is not clear what or where Plaintiff was being detailed to that she complains about.

her schedule, but Hankins told her that Lumpkin told him not to contact him anymore with "that bullshit" about Plaintiff's schedule. This statement did not deter Plaintiff from continuing to attempt to get her schedule modified. After April 2012, Plaintiff claims that Lt. Hankins began demonstrating dislike and resentment toward her because she kept asking him about getting her schedule changed. During one such request, Hankins allegedly yelled at her to stop asking about the issue.

At some point in 2012, Plaintiff told Lt. Hankins that she wanted to transfer out of Station 34. She stated that she was afraid to work under Lt. Edwards because of his 2008 comments and her subsequent harassment complaint. Hankins denied her request and allegedly told her, "I'm tired of you, and you're getting on my nerves, why don't you just go where you're told!" After this, two different Chiefs (Chief Lumpkin and Chief Sweat) spoke to Plaintiff to tell her that she had to work at Station 34 and nothing could be done to change her schedule.[3] In response, Plaintiff filed a complaint with the Union about her scheduling issues. After she complained to the Union, the Department changed Plaintiff's schedule and detailed her to a different unit, away from Lt. Edwards. After getting the changes she wanted, Plaintiff claims she felt hostility from Lt. Hankins because "whenever she asked him anything he always responded loudly and aggressively."

On March 26, 2013, Plaintiff received a "documentation of counseling session." The documentation of counseling session specifically states that "[t]his is not a disciplinary action." However, Plaintiff believes a documentation of counseling session is a form of written disciplinary action because failing to adhere to the recommendations in the document allegedly results in adverse employment consequences and is considered a "major violation." Plaintiff

---

[3] Chief Sweat, a female, was allegedly sent by the Department to talk to Plaintiff to help her feel comfortable working with Lt. Edwards.

tried to talk to Chief Lumpkin about the documentation of counseling she received, but her direct supervisor, Lt. Hankins, refused to let her talk to Lumpkin because he said a documentation of counseling session was "not important." When Plaintiff persisted in her requests, Lt. Hankins allegedly threatened to fire Plaintiff for disobeying a command if she said anything to Chief Lumpkin. Despite these threats, Plaintiff began talking to Chief Lumpkin about the issue, at which point Lt. Hankins stated: "Chief, that girl was in there talking, I told her she got that write up and I'm not letting her talk to you. I told her I handled it, it's just a little write-up, she kept asking to talk to you and Chief it got to the point that I thought I was goanna [*sic*] have to chock [*sic*] (strangle) her [] out." Hours later, Plaintiff received another documentation of counseling for not following rules and regulations after Chief Lumpkin sent an e-mail to Lt. Hankins instructing him to give Plaintiff a "Counseling Session for raising her voice [] and being insubordinate." In the e-mail, Chief Lumpkin also advised Lt. Hankins to tell Plaintiff to get help from the City's Employee Assistance Program ("EAP").

Plaintiff took Lumpkin's advice and began discussing her problems with the Department's EAP. On April 3, 2013, Plaintiff filed an EEOC Charge ("First EEOC Charge") based on gender discrimination and retaliation. On April 8, 2013, Plaintiff took a medical leave of absence, checked into a mental health facility and began a partial hospitalization program (and later an intensive outpatient program) at Lakeside Behavioral Health. Plaintiff never returned to work after taking medical leave. Plaintiff claims that she communicated with Defendant about her status after her doctor cleared her to return to work on June 8, 2013, and again on July 1, 2013. Plaintiff was discharged from her intensive outpatient care at Lakeside Behavioral Health on July 26, 2013, but continued to see a psychiatrist. Letters from Plaintiff's psychiatrist dated October 29, 2013, and November 5, 2013, state that Plaintiff's mental health conditions rendered

her incapable of going back to her previous job location at that time.

On October 3, 2013, Plaintiff wrote to Alvin Benson, Director of Fire Services for the City of Memphis, asking him to extend her medical leave without pay for an unspecified time frame. Plaintiff met with Iyona Houston of Defendant's EEO/Labor Relations Office on October 15, 2013, to discuss the process of requesting an accommodation under the Americans with Disabilities Act. Ms. Houston provided Plaintiff the necessary documents to request an accommodation and informed her that Defendant would consider the request for accommodation to be withdrawn if it did not receive the necessary documentation by November 15, 2013. Plaintiff did not provide the necessary documentation by that deadline. However, on November 12, 2013, Plaintiff wrote another letter to Benson, again asking him to extend her medical leave without pay for an unspecified time frame.

In a letter dated December 10, 2013, Benson informed Plaintiff in writing that her request for extended leave was denied because she had exhausted her FMLA leave on July 1, 2013, and did not provide the necessary documentation for an ADA accommodation by the November 15 deadline. In the letter, Benson advised Plaintiff that she would be terminated based on job abandonment if she did not return to work by December 17, 2013. Plaintiff did not return to work and Defendant terminated her employment on December 17, 2013. Plaintiff filed another EEOC Charge (the "Second EEOC Charge") on December 27, 2013, alleging disability discrimination and retaliation.

## STANDARD OF REVIEW

District courts must conduct a *de novo* review of the parts of a magistrate judge's report and recommendation to which a party objects. See 28 U.S.C. § 636(b)(1). Plaintiff objected to the report and recommendation and thus the Court has reviewed the pleadings, motion and report

and recommendation in this case *de novo*.

Defendant argues that Plaintiff failed to state a claim upon which relief can be granted. Rule 12(b)(6) requires that a plaintiff provide enough facts in their pleadings to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint must "contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Indiana State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc., 719 F.3d 498, 502 (6th Cir. 2013) (quoting Mezibov v. Allen, 411 F.3d 712, 716 (6th Cir. 2005)). "While plausibility requires relief to be more than speculative, it need not be probable; rather, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely.'" Montesi v. Nationwide Mut. Ins. Co., 970 F. Supp. 2d 784, 788 (W.D. Tenn. 2013) (quoting Erie County, Ohio v. Morton Salt, Inc., 702 F.3d 860, 867 (6th Cir. 2012)). While Plaintiff must ultimately satisfy the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to win her case on the merits, at this stage she is only required to put forth sufficient facts to state a plausible claim for relief. See Keys v. Humana, Inc., 684 F.3d 605, 610 (6th Cir. 2012) (noting that plaintiffs do not have to satisfy every element of the McDonnell Douglas test to survive a motion to dismiss under Rule 12(b)(6)).

After reviewing this matter *de novo*, the Court agrees with the Magistrate Judge's recommendation that Defendant's Motion to Dismiss should be **GRANTED** and that Plaintiff's claims should be **DISMISSED**.

## ANALYSIS

Defendant argues that Plaintiff has failed to state claims for sex discrimination and

retaliation under Title VII, 42 U.S.C. § 2000 *et seq*. The Magistrate Judge recommended granting Defendant's Motion to Dismiss and dismissing these claims (as well as Plaintiff's disability discrimination claim), and, for the following reasons, the Court agrees.

**1.      Gender Discrimination**

Plaintiff alleged gender discrimination in her original complaint but did not explicitly repeat this claim in her amended complaint. However, the Court construes her complaint as alleging a claim for gender discrimination because Plaintiff still references gender discrimination in the amended complaint and because she made allegations regarding gender discrimination in both her First and Second EEOC Charges. While the Court construes Plaintiff's complaint to include a claim of gender discrimination, Plaintiff has failed to include sufficient facts to properly state a gender discrimination claim.

To make out a *prima facie* case of gender discrimination under Title VII, Plaintiff must prove: (1) that she was a member of a protected class; (2) that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that a similarly situated person outside the protected class was treated more favorably than her. Clay v. United Parcel Serv., Inc., 501 F.3d 695, 703 (6th Cir. 2007) (citing Braithwaite v. Timken Co., 258 F.3d 488, 493 (6th Cir. 2001)). To demonstrate that the employer subjected the plaintiff to an adverse employment action, the plaintiff must show that the defendant "changed the terms or conditions of her employment in a way that was materially adverse to her." Hollins v. Atl. Co., 188 F.3d 652, 662 (6th Cir. 1999). The change in the terms and conditions of employment must be more than a mere inconvenience; it must be of the magnitude of a termination of employment, a demotion, a decrease in salary, or a material loss of benefits. Id. (citing Crady Liberty Nat'l Bank & Trust Co. of Ind., 993 F.2d 132, 136 (7th Cir. 1993)). Plaintiff's claim fails because she

has not pled any facts that show that she suffered an adverse employment action based on her gender.

Plaintiff alleges that she received "unmerited write-ups" in 2009 and 2010, but does not include any other details about these write-ups. She does not identify the date they were issued, who issued them or their subject matter. She also does not specify how these write-ups constituted an adverse employment action or allege that Defendant treated male employees differently. This bare allegation of unmerited write-ups issued at some point during a two year period is insufficient to state a plausible claim for gender discrimination.

Plaintiff also claims that she received two "documentations of counseling sessions" in 2013. However, while Plaintiff states that she perceives these documents to be a form of written disciplinary action, the documents themselves state that "[t]his is not a disciplinary action." (See ECF No. 1-4.) Furthermore, Plaintiff has not identified any adverse actions that stemmed from receiving these documents. Therefore, these documentations of counseling sessions do not meet the adverse employment action element of Plaintiff's discrimination claim.[4] Because Plaintiff's allegations of adverse employment actions by Defendant are insufficient, she has failed to state a claim for gender discrimination, and Defendant's Motion to Dismiss is **GRANTED** as to that claim.

Plaintiff also appears to claim that Defendant subjected her to a hostile work environment based on her gender. To establish a hostile work environment claim based on sexual harassment, Plaintiff must show that: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the

---

[4] It is true that Plaintiff ultimately lost her job in 2013 and that the termination qualifies as an adverse employment action. However, Plaintiff does not claim that she was terminated based on her gender. Rather, she claims that Defendant terminated her in retaliation for filing an EEOC charge and for being disabled.

8

harassment created a hostile work environment; and (5) the employer is liable. Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 733 (6th Cir. 2006). A hostile work environment is a workplace permeated with discriminatory intimidation, ridicule, and insult that is, both subjectively and objectively, sufficiently severe or pervasive to create an abusive working environment and alter the conditions of the victim's employment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370, 126 L. Ed. 2d 295 (1993). Factors to consider in whether a hostile work environment exists include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 23. The conduct mentioned in Plaintiff's allegations is not sufficiently severe or pervasive to create an objectively hostile work environment, therefore she has failed to state a plausible hostile work environment claim.

Plaintiff alleges that Lt. Hankins made gender-related comments in 2008 about her painting her nails or putting on make-up while she was driving, and stated that getting her a GPS was like "giving his son condoms to keep from getting girls pregnant." These comments, on their own, are not sufficiently severe to establish a hostile work environment, and Plaintiff's other allegations of a hostile work environment are either vague or unrelated to gender.

Plaintiff claims that: (1) she was issued unmerited disciplinary actions in 2009 and 2010; (2) she was forced to work at the same station as Lt. Edwards until she complained to the Union in 2012; (3) Lt. Hankins "demonstrated a great dislike" for her and responded loudly and aggressively to her; and (4) she received two documentation of counseling reports in 2013. While Plaintiff may subjectively believe this was a hostile work environment and all part of a plot to assist Lt. Edwards in retaliating against her for her 2008 sexual harassment claims, she

has not alleged sufficient facts showing severe and pervasive behavior to establish that there was an objectively hostile work environment based on her gender. It is noteworthy that Plaintiff herself states several times that the reactions she received from her supervisors resulted from her continuing to ask for a different schedule after she had been told repeatedly that the schedule would not change. This conflict appears to be devoid of any connection to gender.

Therefore, Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's gender-based hostile work environment claim.

**2. Retaliation**

To make out a *prima facie* case of retaliation, Plaintiff must show that (1) she engaged in activity protected under Title VII; (2) her exercise of her protected rights was known to Defendant; (3) an adverse employment action was subsequently taken against her; and (4) there was a causal connection between the protected activity and the adverse employment action. Fuhr v. Hazel Park School Dist., 710 F.3d 668, 674 (6th Cir. 2013) (citing Garner v. Cuyahoga Cnty. Juvenile Court, 554 F.3d 624, 639 (6th Cir. 2009)).

Plaintiff has pled facts satisfying the first three elements of her *prima facie* case of retaliation, but there is nothing in her complaint that could establish a causal connection between the protected activity and the adverse employment action. "To demonstrate a causal connection between a materially adverse action . . . and the exercise of protected rights, a plaintiff must proffer evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action." Lindsey v. Whirlpool Corp., 295 F. App'x 758, 769 (6th Cir. 2008) (citation and internal quotation marks omitted). If an adverse employment action occurs very close in time after an employer learns of an employee's protected activity, this temporal proximity may be sufficient to show a causal connection. Mickey v. Zeidler Tool & Die Co.,

516 F.3d 516, 525 (6th Cir. 2008). However, temporal proximity alone is generally insufficient to establish a causal connection. In cases where there has been a gap in time between the protected activity and the retaliation, plaintiffs must couple claims based on temporal proximity with other indicia of retaliatory conduct to support a finding of a causal connection. See Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 737 (6th Cir. 2006); see also Kean v. IT-Works, Inc., 466 F. App'x 468, 471 (6th Cir. 2012) (holding that a two-and-a-half month gap is insufficient to support an inference of causation without other evidence of retaliation). Here, Plaintiff's claim fails because she has not pled facts showing any indicia of retaliatory conduct other than a relatively distant temporal proximity.

Plaintiff first complained of sexual harassment on February 25, 2008. While she argues that Defendant failed to adequately investigate her claims, she does not allege that she suffered any adverse employment actions until some unspecified point in 2009 when she was allegedly issued unmerited disciplinary actions. Plaintiff next engaged in protected activity when she filed her First EEOC charge on April 3, 2013. Plaintiff does not allege that Defendant subjected her to any further adverse employment consequences until terminating her on December 17, 2013, when she failed to return to work by Defendant's deadline for doing so. These gaps in time (at least eight months between her first complaint and the unmerited disciplinary actions, and eight months between her First EEOC Charge and her termination) are insufficient to establish a claim based solely on temporal proximity.

Furthermore, Plaintiff has not pled any facts that show a connection between her protected activity in 2008 (when she first alleged sexual harassment) and her termination in December 2013. Plaintiff claims that Defendant retaliated against her by: (1) issuing her some vague "unmerited disciplinary actions" in 2009 and 2010; (2) "detailing" her more than usual in

11

2012; (3) refusing to modify her schedule in 2012; and (4) issuing her two documentation of counseling sessions in 2013. However, other than Plaintiff's conclusory allegations, there are no facts in her pleadings that show that any of these actions occurring over the course of five years were related to Plaintiff's protected activity in February 2008. Likewise, Plaintiff has not alleged any facts that occurred between when she filed her First EEOC Charge in April 2013 and when Defendant terminated her in December 2013 that could support an inference of retaliation. Accordingly, Defendant's Motion to Dismiss is **GRANTED** as to Plaintiff's retaliation claim.

3.     **Disability discrimination**

In her Second EEOC Charge, Plaintiff claims that she is disabled and that Defendant terminated her because of her disability. While Plaintiff's Complaint focuses mainly on retaliation and gender discrimination, she also includes a claim for disability discrimination under section 102(a) of the Americans with Disabilities Act. See 42 U.S.C. § 12112(a).

Defendant did not address Plaintiff's disability discrimination claim in its Motion to Dismiss. Magistrate Judge Vescovo recognized the potential claim, but found that Plaintiff abandoned it and failed to include sufficient factual allegations to support it. The Court agrees that Plaintiff has not made sufficient factual allegations to support this claim.

Plaintiff did allege that she was terminated based on her disability in her amended complaint (see ECF No. 7, ¶ 8) , but did not include sufficient facts in support of the claim. Although Defendant did not address this claim in its motion, under the Prison Litigation Reform Act, the Court must dismiss *in forma pauperis* complaints *sua sponte* if the complaint fails to state a claim on which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii). Because Plaintiff's amended complaint does not contain sufficient factual claims to make out a *prima facie* case for disability discrimination, it must be DISMISSED.

To make out a *prima facie* case under Title I of the ADA, Plaintiff must show that (1) she is disabled; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) the employer knew or had reason to know of her disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced. Whitfield v. Tennessee, 639 F.3d 253, 258-59 (6th Cir. 2011) (quoting Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir.2002)). Here, Plaintiff exhausted her FMLA leave in July. The record is unclear as to how her leave was extended beyond that time, but, on October 3, 2013, Plaintiff sent a letter to the Director of Fire Services, Alvin Benson, stating that she was unable to work due to her mental health issues and requesting an extension of her unpaid leave "until [her] situation [could] be resolved." She met with Defendant on October 15 to discuss the accommodations process, and Defendant informed her of the information it would need to consider the accommodation. Plaintiff did not provide this information within the deadline Defendant set, but instead asked for a continued extension of her unpaid sick leave for an unspecified period of time without submitting the requested documentation.[5] Defendant denied this request based on Plaintiff's failure to provide the requested information as part of the accommodations process, and gave Plaintiff a deadline to return to work. Plaintiff chose not to return by that deadline and Defendant terminated her. These facts are insufficient to make out a *prima facie* case for disability discrimination, particularly that Plaintiff was otherwise qualified for the position, with or without any

---

[5] Along with her complaint, Plaintiff filed a letter from her psychologist (Dr. Liusong Fu) dated November 5, 2013, stating that Plaintiff suffered from severe major depression disorder and anxiety disorder that is triggered by her current position and working environment. The letter goes on to state that Plaintiff's current mental health conditions make her incapable of going back to her previous job and she should not go back to work for up to 60 days if there is no significant change in her work environment. There is no indication that Plaintiff sent this letter to Defendant.

accommodations. Therefore, this claim must be **DISMISSED**.

## CONCLUSION

Plaintiff failed to plead sufficient facts to raise a right to relief above the speculative level as to her gender discrimination, retaliation and disability discrimination claims. Therefore, the Court hereby **ADOPTS** the Magistrate Judge's Report and Recommendations and Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's Complaint is hereby **DISMISSED**.

**IT IS SO ORDERED,** this 11th day of August, 2015.

s/ Sheryl H. Lipman<br>
SHERYL H. LIPMAN<br>
UNITED STATES DISTRICT JUDGE